**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BRIAN J. MAY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

**SHARON R. ALBRECHT**
DCS St. Joseph County Office
South Bend, Indiana

FILED

Jan 24 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) |
| | ) |
| J.W. & C.W. (Minor Children) | ) |
| | ) |
| And | ) |
| | ) |
| M.W. (Father) | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 71A05-1105-JT-278 |
| | ) |
| | ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) |
| | ) |
| Appellee-Petitioner. | ) |
| | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Peter J. Nemeth, Judge
Cause Nos. 71J01-1010-JT-256 & 71J01-1010-JT-257

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

M.W. ("Father") appeals the involuntary termination of his parental rights to his children, J.W. and C.W. Concluding that the Indiana Department of Child Services, local office in St. Joseph County ("SJCDCS"), presented clear and convincing evidence to support the trial court's judgment, we affirm.

## Facts and Procedural History

Father is the biological parent of J.W., born in July 2008, and C.W., born in September 2009.[1] The facts most favorable to the trial court's judgment reveal that several days following C.W.'s birth and release from the hospital, SJCDCS received a report that drug tests performed on the baby's meconium came back positive for cocaine, opiates, amphetamines, marijuana, and benzodiazepines. A SJCDCS assessment case worker visited the family home and determined J.W. and C.W. were in no immediate danger, as both children appeared well cared-for, there was adequate food and housing for the family, and both parents were forthcoming concerning their respective drug use during the weeks before C.W.'s birth. In addition, both parents acknowledged the need for assistance in maintaining a drug-free home environment, and both parents voluntarily

---

[1] At the outset, we observe that the parental rights of the children's biological mother, T.W. ("Mother"), were also involuntarily terminated by the trial court. Mother, however, does not participate in this appeal. We therefore limit our recitation of the facts to those pertinent solely to Father's appeal.

submitted to drug screens. Father's drug screen results were negative, and Mother tested positive for THC metabolites.

As a result of its initial assessment, SJCDCS determined that although the family required services, physical removal of the children was not necessary at that time. Consequently, J.W. and C.W. were allowed to remain in the family home while the family received home-based counseling services. Additionally, SJCDCS sought and received permission from the trial court to file child in need of services ("CHINS") petitions as to both children. In December 2009, SJCDCS filed petitions under separate cause numbers alleging J.W. and C.W. were CHINS, Father admitted to the allegations in the CHINS petitions, and the children were so adjudicated.

After a dispositional hearing in January 2011, the trial court issued an order directing Father to participate in and successfully complete a variety of tasks and services designed to improve his parenting abilities and to address his substance abuse issues. Specifically, Father was ordered to, among other things: (1) cooperate with home-based service providers; (2) complete a drug and alcohol assessment and follow any resulting recommendations; (3) abstain from all use of illegal substances and submit to random drug screens; (4) allow SJCDCS case managers and/or other service providers to make both announced and unannounced visits to the family home, including entrance to the home to ensure the safety of the children; (5) successfully complete parenting classes; (6) obtain and maintain stable housing and employment; (7) maintain contact with SJCDCS; and (8) properly care for the children. Father did not attend the dispositional hearing, however, because he was incarcerated on a probation violation in an unrelated criminal

3

matter for failing to comply with the terms of the Court Substance Abuse Program of St. Joseph County.

After the dispositional hearing, Mother confided to her SJCDCS case worker that she and the children had recently been living with Mother's aunt and grandmother, but that they were all being evicted from the home. The SJCDCS family case manager later advised Mother that she and the children were not allowed to live in the same home with Mother's aunt and grandmother because both relatives had prior histories with SJCDCS for neglect. Mother was reminded of this condition when she later obtained an apartment. Notwithstanding these warnings, however, SJCDCS received and substantiated a report in March 2010 that Mother and the children had been living in the same hotel room with Mother's unapproved relatives. Consequently, both children were immediately removed from Mother's custody and placed in foster care. The court's dispositional orders were later modified to include supervised in-home visits with the children.

Upon Father's release from incarceration in April 2010, he joined Mother in visiting with the children. Initially, these visits seemed to go well, but the parents soon began making last-minute requests to reschedule the visit dates and times. Father also began exhibiting erratic behaviors during visits and testing positive for illegal and/or controlled substances. Specifically, Father failed nine of fifteen drug screens administered between April and July 2010, testing positive for oxycodone, hydrocodone, propoxyphene, morphine, heroin, THC, amphetamines, methamphetamines, and

4

alprazolam. Father refused to submit to several additional drug screen requests during this time period as well.

By June 2010, the supervised in-home visits had been moved to a visitation facility, due in large part to Father's ongoing drug use. In addition, although he was referred for out-patient substance abuse treatment on at least two separate occasions to the Family and Children's Center, Father refused to participate in any treatment programs. By July 2010, Father's visitation privileges with the children had been suspended until such time as Father could produce three consecutive clean drug screens. Father failed to do so and never visited with his children again.

In October 2010, SJCDCS filed petitions seeking the involuntary termination of Father's parental rights to both children. Notwithstanding the pending termination proceedings, however, SJCDCS continued to refer Father to inpatient treatment programs, including the Life Treatment Center in January 2011, as well as to the Oaklawn Outpatient Drug Treatment program. Father again refused to participate in either of these programs and later the same month was re-incarcerated in the Marshall County Jail on new criminal charges.

A consolidated, two-day evidentiary hearing on the involuntary termination petitions was held in April 2011. During the termination hearing, SJCDCS presented evidence showing Father remained incapable of providing the children with a safe and stable home environment, due in large part to his current incarceration and untreated substance abuse issues. Additionally, the evidence established that J.W. and C.W. were living together and thriving in a pre-adoptive foster home. At the conclusion of the

termination hearing, the trial court took the matter under advisement. The trial court issued separate judgments terminating Father's parental rights to C.W. and J.W. in April and May 2011. Father now brings this consolidated appeal.

**Discussion and Decision**

This Court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing the termination of parental rights, we will neither reweigh the evidence nor judge witness credibility. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Here, in terminating Father's parental rights, the trial court entered specific findings and conclusions. When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *L.S.*, 717 N.E.2d at 208.

6

The "traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *K.S.*, 750 N.E.2d at 836.

Before an involuntary termination of parental rights may occur in Indiana, the State is required to allege and prove, among other things:

(B)     that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the  parent-child relationship poses a threat to the well-being of the child.

(iii)     The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "The State's burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257,

7

1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). If the trial court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a). Father does not challenge any of the trial court's specific findings pertaining to the above-cited elements as unsupported by the evidence. Rather, Father asserts that he has achieved sobriety "on his own" since being incarcerated in the Marshall County Jail, anticipates an early release from incarceration, and "is hopeful" that his early release date "will convince this court to set aside" the trial court's judgment "until he can get back on his feet." Appellant's Br. p. 10. These arguments can be fairly described as a challenge to the sufficiency of the evidence supporting the trial court's judgment as to subsection 4(b)(2)(B) of Indiana's termination statute cited above. *See* Ind. Code § 31-35-2-4(b)(2)(B).

We begin our review by observing that Indiana Code section 31-35-2-4(b)(2)(B) requires a trial court to find that only one of the three elements of subsection (b)(2)(B) has been established by clear and convincing evidence before properly terminating parental rights. *See L.S.*, 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we only consider whether SJCDCS established, by clear and convincing evidence, that there is a reasonable probability the conditions resulting in C.W.'s and J.W.'s removal and/or continued placement outside Father's care will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i).

A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also

8

"evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied.* Moreover, a county department of child services is not required to provide evidence ruling out all possibilities of change; rather, it need only establish that there is a reasonable probability the parent's behavior will not change. *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). Finally, we have previously explained that Indiana's termination statute makes clear that "it is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside of the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied.*

Here, in determining that there is a reasonable probability the conditions leading to the children's removal and/or continued placement outside Father's care will not be remedied, the trial court made several pertinent findings regarding Father's past and present inability to provide C.W. and J.W. with a safe, stable, and drug-free home environment. Specifically, the trial court found that "[i]n-home therapeutic services for [the] parents were discontinued due to non-compliance with the program." Appellant's

9

App. p. 88.[2] The court further found that Father "did not successfully complete drug and alcohol classes," became "addicted to heroin and went through detoxification while incarcerated from January 2011 to the present," that "[o]ngoing drug use by both parents prevented them from complying with the requirements of their case plan," and that both parents "promised at many court hearings that they would reform their lifestyle but have always reverted to using drugs." *Id.* A thorough review of the record reveals that these findings and conclusions are supported by abundant evidence.

Testimony from SJCDCS family case manager Emily Russell, court-appointed special advocate ("CASA") Laura Sinn, coupled with Father's own testimony makes clear that, at the time of the termination hearing, Father's circumstances and ability to care for the children had worsened, rather than improved, despite a wealth of services available to Father. Specifically, during the underlying CHINS and termination cases, Father was arrested and incarcerated twice for drug-related activities and had become addicted to heroin. Moreover, at the time of the termination hearing, Father remained incarcerated and thus was unavailable to parent the children. Father had also failed to complete any substance abuse treatment program despite multiple opportunities to do so, had not visited with the children since July 2010, and had failed to obtained stable housing and employment. When specifically questioned during the termination hearing as to his current ability to care for the children, Father admitted that he was "not ready" to care for the children and further testified that he "need[s] to put [him]self into an

---

[2] For clarification purposes, we note that the language of the trial court's termination orders pertaining to each child is substantially identical, apart from certain identifying information. We therefore cite to only one judgment throughout this opinion.

inpatient rehab program" for "at least a minimum of six months to a year" so that he is "strong enough to be a father and to do what [he's] supposed to be doing . . . and not neglect [the] children by drug abuse . . . ." Tr. p. 62-63.

Family case manager Russell and CASA Sinn likewise informed the trial court that Father had failed to complete a majority of the trial court's dispositional goals, most notably a substance abuse treatment program, and further confirmed that Father remained incapable of providing the children with a safe and stable home environment. In recommending termination of Father's parental rights, Russell informed the court that she believed continuation of the parent-child relationships between Father and the children posed a threat to the children's well-being. Russell also acknowledged that she did not have any confidence in Father's recent jailhouse sobriety or in his promises of future improvement, stating she has "personally heard" the "same promises" "multiple times" in the past, and pointing out that Father's ability to remain "clean" in the "real world" remained unknown and would have to be monitored due to the fact he was currently in a "controlled setting . . . free from any type of contact where he could get drugs. . . ." *Id.* at 163-64.

As previously mentioned, a court on review must determine whether the specific findings are adequate to support the trial court's decision. *In re B.J.*, 879 N.E.2d 7, 19 (Ind. Ct. App. 2008), *trans. denied*. Based on the foregoing, we conclude that SJCDCS presented clear and convincing evidence to support the trial court's findings cited above, including its determination that there is a reasonable probability the conditions resulting in C.W.'s and J.W.'s removal and continued placement outside Father's care will not be

11

remedied. These findings, in turn, support the court's ultimate decision to terminate Father's parental rights to both children. Father's arguments to the contrary amount to an impermissible invitation to reweigh the evidence. *See D.D.*, 804 N.E.2d at 264.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.